Anita T. OWENS, Plaintiff and Appellant,

v.

Raymond WHITE, John C. McCarter, Alfred Popma, and St. Lukes Hospital, a corporation, Defendants and Appellees.

No. 19251.

United States Court of Appeals
Ninth Circuit.

March 12, 1965.

James Haughey, Belli, Ashe & Gerry, San Francisco, Cal., Lon F. Davis, Holden, Holden & Kidwell, Idaho Falls, Idaho, for appellant.

J. F. Martin, Eugene Thomas, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for appellees.

Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

On October 14, 1963, plaintiff filed her complaint in the district court, seeking to recover judgment against defendants for damages resulting from their alleged malpractice. Jurisdiction was based upon diversity of citizenship of the parties. The court granted defendants' motions to dismiss plaintiff's several claims on the ground that, under the governing Idaho law, plaintiff's right to prosecute them was barred by the statute of limitations. The court did not rule on the part of the defendant doctors' motion, which attacked the complaint for failing to state "any fact or facts sufficient to grant the relief prayed for  *  *  *." Plaintiff has appealed.

The sole question presented is whether suit was commenced within two years after plaintiff's malpractice claim "accrued," that being the time prescribed by the applicable Idaho statute of limitations for the commencement of such suits. Idaho Code 5–201, 5–219, Par. 4 (1948); Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224, 225 (1964).

It appears from plaintiff's complaint that in August, 1951, plaintiff consulted the three defendant doctors concerning a lump in her left breast. Then after a series of examinations, including a pathological test, participated in by the defendant hospital, the doctors negligently diagnosed the condition as cancerous and recommended surgery. That, "thereafter," they operated on plaintiff, removing the breast and surrounding tissue; treatments continued until December, 1959, when plaintiff was released and the professional relationship ceased. That in the "fall" of 1962 plaintiff learned for the first time that the lump was benign and had not been a carcinoma, that is, a cancerous tumor. Plaintiff further alleges that she "could not have discovered such fact (i. e., the erroneous and negligent diagnosis) at any earlier date through due and reasonable diligence."

Plaintiff contends that the statute of limitations does not begin to run on a claim for malpractice until the injured party knows, or in the exercise of due diligence should know, of the injury and its cause. Under this theory, sometimes referred to as the "discovery" doctrine, if as she alleges, she was not chargeable with knowledge of the defendants' negligent diagnosis until sometime during 1962, her right to prosecute the suit was not barred.

Defendants argue that a claim accrues and hence the statute starts to run when the malpractice is committed or, at the latest, when the treatment is terminated and that, in this case, since both events occurred more than two years before the complaint was filed, the suit is barred.

A considerable difference of opinion exists among the various jurisdictions as to when the statute begins to run on a claim for malpractice. Idaho has no statute defining the meaning of the term "accrue" appearing in its statute of limitations and, at the time this case was before the court below, the Supreme Court of that State had not had occasion to consider the question.

Shortly after this appeal was taken, however, the Idaho court, in the case of Billings v. Sisters of Mercy, supra, aligned itself with those jurisdictions which follow the so-called "discovery doctrine," and declined to adopt the contention urged upon it by the defendant that such a claim accrues at the time of the negligent act, regardless of the injured party's notice or lack of notice of that fact.[1]

1. Prior to Billings, this court was obliged to construe the Idaho statute of limitations applicable to malpractice suits. In Summers v. Wallace Hospital, 276 F.2d

The Idaho court criticized as ill-considered the view that a malpractice claim invariably comes into existence contemporaneously with the wrongful act. Such a rule, said the court, is valid when applied to "ordinary torts" because in those instances the injured party, being aware of the nature and quality of the act, "can use judicial process to secure enforcement of [his] right" and is at fault if he fails to do so. But an undiscovered malpractice claim involves "an entirely different situation." In the latter type of case it is more logical to follow the reasoning " ' * * * [that] the "cause of action" which commences the limitations period should not refer to the "technical" breach of duty which determines whether the plaintiff has any legal right, but to the existence of a practical remedy.' " Billings v. Sisters of Mercy, supra, 389 P.2d at 231.

It is important to note that the court's inquiry was directed to the question whether the cause had accrued and the statute had commenced to run, and not to whether the statute had run or was tolled. Nevertheless, the court examined the policy underlying statutes of limitation and found it not inconsistent with adoption of the discovery rule. The court elaborated that "statutes of limitations are statutes of repose, the object of which is to prevent fraudulent and stale claims from springing up after a great lapse of time," and pointed out that absent those considerations there would be no occasion to apply such statutes. From this the court reasoned that to rigidly apply the principle of statutes of limitation in the situation at bar was inequitable because it would unjustly penalize the injured party who was not guilty of "sitting on his rights" and whose claim was not likely fraudulent.

It is true that Billings does differ in one respect from the case before us; there, the court was dealing with a malpractice claim which rested upon the presence of a sponge alleged to have been carelessly left in plaintiff's body during a surgical operation, while here, the malpractice claim is based upon a negligent diagnosis. It is perhaps also true that the claim in a suit involving a foreign object as in Billings is more apt to be bona fide than one which will undoubtedly depend upon testimony or other indirect evidence for proof. But this factual difference is not controlling. It merely relates to the manner of proof. Grant, that the possibility of fraud is increased in the latter instance. But plainly, the possibility does not remotely approach the point where possibility becomes probability and hence a decisive reason for cutting off the claim. The usual presumption is that a person submits a claim in good faith. To conclude otherwise requires a resort to speculation and reliance upon suspicion. In addition, the burden of establishing a claim rests upon the plaintiff, and the stale nature of the evidence cuts two ways, militating against him as well as the defendant.

▆▆▆ Whether plaintiff's claim has accrued is a question of law [Chemung Mining Co. v. Hanley, 9 Idaho 786, 77 P. 226 (1904)], and like all issues of law must be resolved by the court even though this will require evidence; in other words, the issue presents a preliminary matter for the court, rather than the jury, since it does not reach the merits of the claim but instead involves the very existence of the claim itself. As Professor McCormick states, it is unrealistic to expect the jury to perform the "intellectual gymnastic" of adjudicating both the limitations question and the merits. See McCormick, Evidence § 53 (1954). Just as the question of when the cause of action "accrued" raised a pure question of law before Idaho adopted the discovery rule, we can see no reason why it does not do so after its adop-

831 (9th Cir. 1960), we observed that the rule postponing the commencement of the statute until the malpractice has been discovered "has much to recommend it," but predicted that the Idaho courts would probably not follow it. However, that forecast of the state law must yield to Billings, which constitutes the definitive decision by the highest court of Idaho.

tion. In sum, we hold that the discovery rule may be invoked in this case, and whether it is to be applied is a preliminary legal question for the court to determine. This conclusion requires that the judgment be reversed and the cause remanded. Accordingly, we deem it appropriate to add the following caveat: Consistent with the prominence given to the policy underlying statutes of limitations in Billings, supra, we believe the Idaho court would temper application of the discovery doctrine by hedging it with equitable considerations. To illustrate, courts in other states that have applied the discovery doctrine to non-foreign object cases have emphasized factors such as the "continuing relationship" between doctor and patient as a reason for applying the rule. Hundley v. St. Francis Hospital, 161 Cal.App.2d 800, 327 P.2d 131, 135, 80 A.L.R.2d 360 (1958) (Negligent Removal of Organs); Greninger v. Fischer, 81 Cal.App.2d 549, 184 P.2d 694 (1947) (Negligent Diagnosis); Myers v. Stevenson, 125 Cal. App.2d 399, 270 P.2d 885, 887 (1954) (Child Injured During Birth). This suggests in our estimation, that the discovery doctrine is itself subject to some restraint as the time from the occurrence of the malpractice grows greater. In such circumstances, the considerations of fairness to the defendant underlying statutes of limitation become more insistent, while the plaintiff's appeals to equity implicit in the discovery doctrine become less so. We believe the Idaho courts would apply a concept akin to the equitable doctrine of laches to limit the discovery rule, a rule which itself has its genesis in equity. Thus, the suit of a plaintiff who is reasonably diligent may be barred if the defendant shows undue prejudice because of an extreme lapse of time between the commission of the wrongful act and the commencement of suit. To so conclude strikes us as a reasonable accommodation between the competing considerations noted in Billings of giving full scope to the statute of limitations on the one hand and according a reasonable measure of justice to the plaintiff on the other.

 Factors which might be considered in making such a determination would be illustrated by but not limited to: the nature of the alleged injury,[2] the relative difficulty of proving the wrong as contrasted with rebutting that proof,[3] the availability of witnesses and records, the existence of a continuing relationship between doctor and patient,[4] and the inherent difficulty of discovering certain wrongs.[5]

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

---

2. Relevant here is whether the case involves a foreign object, carrying its independent indicia of negligence.

3. As the Oregon court has observed, "[t]he physician and surgeon often are handicapped in their defense, because of the mute appeal that is made to the sympathies of jurors by the pitiable condition of plaintiffs in many malpractice cases." Wilder v. Haworth, 187 Or. 688, 213 P.2d 797, 801 (1950).

4. For example, see Costa v. Regents of University of California, 116 Cal.App.2d 445, 254 P.2d 85 (1953); Seitz v. Jones, 370 P.2d 300 (Okla.1962).

5. For example, see Agnew v. Larson, 82 Cal.App.2d 176, 185 P.2d 851 (1947).