**Anita T. OWENS, Appellant,**

v.

**Raymond L. WHITE et al., Appellees.**

**No. 20585.**

United States Court of Appeals
Ninth Circuit.

June 30, 1967.

Rehearing Denied Aug. 23, 1967.

Melvin M. Belli, Frederick A. Cone, San Francisco, Cal., Vernon K. Smith, Boise, Idaho, Belli, Ashe, Gerry & Ellison, San Francisco, Cal., for appellant.

Eugene Thomas, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for appellee, St. Luke's Hospital.

J. F. Martin, Boise, Idaho, for other appellees.

Before HAMLIN, KOELSCH, and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellant, plaintiff below, sought damages for alleged medical malpractice against three physicians, Popma, McCarter, and White, and against St. Luke's Hospital, with which McCarter was associated. From an adverse judgment she appeals.

Appellant consulted Popma in August, 1951, complaining of a lump in her left breast. Popma advised her that a biopsy should be performed and furnished her with a list of three surgeons, including defendant White. After making inquiry about the recommended physicians, she selected White. The biopsy, which consisted of the removal of the suspect tissue by White and a microscopic examination thereof by McCarter, pathologist for the hospital, led to the conclusion that the lump in appellant's breast was a malignant cancerous growth. Dr. White thereupon advised appellant that a radical mastectomy, removal of the breast and surrounding tissue, should be done. Surgery was performed by White on September 1, 1951. Shortly afterward, on the advice of Popma and White, appellant underwent a series of treatments in which her chest and ovaries were radiated to prevent reactivation of the assumed malignancy. This brought on the menopause at age 30. Plaintiff's last contact with any of the defendant doctors occurred in 1959, when she moved from Idaho to California. At that time, by mail, White furnished her with renewals of certain drug prescriptions and suggested how she might locate a physician. Almost three years later, while employed as a nurse at a California hospital, appellant attended a series of lectures on cancer by one Shaw, a member of that hospital's staff. Her attendance at these lectures caused appellant to consult Dr. Shaw personally. He obtained her records from the defendant-appellee hospital and, after examining slides of tissue which had been removed from her breast for the biopsy, advised her that, in his opinion, she had never been afflicted with cancer. Thereafter, on October 14, 1963, almost four years after her last contact with any of the defendants, appellant filed her complaint in the Southern District of Idaho. She alleged that the defendants had negligently misdiagnosed her condition.

■ This case is now before us for the second time. The first appeal followed orders of the district judge which granted appellees' motions for dismissal on the ground that the action had become barred by Idaho's two-year statute of limitations, I.C. Section 5-219(4). In an opinion reported at 342 F.2d 817 (9th Cir. 1965), we reversed because, while the appeal was pending, the Idaho Supreme Court, in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964), had adopted the so-called "discovery rule." The rule is, generally, that a cause of action for medical malpractice will be held not to accrue until the patient knows, or, in the exercise of reasonable diligence, should have known of the alleged malpractice.[1] The case was remanded to the District Court with instructions that the discovery rule "may be invoked," but that, since Billings was factually distinguishable, the question as to whether the rule should in fact be "applied" was a preliminary matter for the trial judge to determine, as a matter of law. Pursuant to this mandate, the district judge conducted a hearing, without a jury,[2] at which he received evidence on various factors suggested as relevant in our prior opinion. His crucial legal conclusion was that "on a balance of equities, the prejudice to the defendants outweighs the desirability of giving the plaintiff her day in court" and that the discovery rule would not, under the circumstances, be applied so as to toll the statute of limitations. In addition, he concluded that appellant could have,

through the exercise of due diligence, discovered the alleged malpractice, if such had occurred, at any time after the treatment of which she complains. Accordingly, on motions for summary judgment the district judge dismissed the appellant's amended complaint[3] with prejudice.

Jurisdiction of the District Court rested upon diversity of citizenship and the requisite amount in controversy, 28 U.S.C. § 1332. Our power of review is conferred by 28 U.S.C. § 1291.

■ The applicable statute of limitations rule in this diversity action is that of the State of Idaho. Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). Billings, the first Idaho decision to adopt the discovery rule, involved a claim arising from the fact that a foreign object which had been placed in plaintiff's body during surgery had not been removed. The Idaho Supreme Court has not yet determined whether or not it will apply the rule to a case involving the type of malpractice which is alleged to have been committed here. The duty of a federal court exercising diversity jurisdiction, when the state tribunals have not supplied an answer to the direct problem involved, is to apply the rule which it believes would be applied by the highest court of the state if the specific question should be presented to it. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940). The appellant

---

1. Apparently hoping that the discovery rule would apply, appellant had alleged in paragraph IX of her complaint "that before the fall, 1962, plaintiff was not aware of any facts which could put her on inquiry or give her notice that the lump in her breast was in fact benign and plaintiff could not have discovered such fact at any earlier date through due and reasonable diligence."

2. Appellant preserved her right to trial by jury by making demand therefor pursuant to Rule 38(b), Federal Rules of Civil Procedure. As far as we can see from the record, however, she did not object to the nonjury procedure which the dis-

trict judge employed at the preliminary hearing.

3. The memorandum decision in which the district judge ruled that the discovery rule would not apply was rendered on June 22, 1965. Thereafter he allowed appellant to file an amended complaint which included allegations regarding her marital status and appellee White's absence from the state. The new allegations were made in support of another theory for the tolling of the statute of limitations. This additional theory was also rejected by the district judge when he granted the defendants' motions for summary judgment on September 21, 1965.

urges that the forecast of Idaho law which we announced on the first appeal was erroneous. She contends that the rule applies without qualification and that the Idaho court would not, in this case, as we anticipated there, "temper application of the discovery doctrine by hedging it with equitable considerations." 342 F.2d at 820. The appellees counter that, because she failed to petition for rehearing following the issuance of our opinion, that which we there announced must stand as the law of the case. We see the doctrine of law of the case as a matter of judicial self-restraint. It should not constitute a limitation upon our power. See Messenger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). We pass, then, to the question presented.

The object of statutes of limitation, said the Idaho Supreme Court in *Billings*, "is to prevent fraudulent and stale actions from springing up after a great lapse of time. * * * These considerations are not present in a foreign object case." 389 P.2d at 231. In support of its decision to apply the discovery rule in the situation then before it, the Idaho court quoted language from a New Jersey "foreign object" case, Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961),

"It must be borne in mind that [plaintiff's] claim does not raise questions as to her credibility *nor does it rest on matters of professional diagnosis, judgment or discretion.* * * * Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, *at least in this highly confined type of case,* without any undue impairment of the two-year limitation or the considerations of repose which underlie it." 389 P.2d at 231–232. (Emphasis supplied.)

The Idaho court then announced a specific rule,

"[W]here a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body." 389 P.2d at 232.

Appellant points to language from several decisions in which there is indication that certain jurisdictions might broadly apply the discovery rule to a case of the type before us. Most helpful to appellant is language found in Calvin v. Thayer, 150 Cal.App.2d 610, 310 P.2d 59 (1957), wherein the California intermediate appellate court held that the statute of limitations should not commence to run until the plaintiff acquires knowledge of the facts constituting his cause of action, "namely, that [the defendant doctor] * * * had not made a correct diagnosis * * *." 310 P.2d at 62. The policy behind such a liberalized rule is well stated in the concurring opinion in Lundberg v. Bay View Hospital, 175 Ohio St. 133, 191 N.E.2d 821 (1963),

"In this and similar situations, the patient does not know and in most cases the physician does not know that the patient has any basis for a cause of action until * * * the error in diagnosis * * * is discovered by another doctor. * * * To say that the patient had a cause of action all the while, although no one knew about it or suspected it, may meet the tests of some legal theory, but the result hardly meets the standards of justice or logic.

"The practical effect of a holding that the statute of limitations * * * begins to run in case of malpractice at any time before the patient discovers or, in the exercise of reasonable diligence, should have discovered the injury requires the legally prudent patient to consult another physician promptly after any medical treatment or surgery for a check on the procedures followed and judgments made by the physician upon whom he relied initially. Even if it were always possible to secure the services of a physi-

cian to check the work of another, such a practice would undermine the professional relationship between the physician and his patient, which in many cases is as important to the health of the patient as the medical or surgical treatment administered." 191 N.E.2d at 824–825.

It cannot be denied that application of the discovery rule so as to enable a diligent plaintiff to prosecute a meritorious cause of action may serve the ends of justice. It is also true, however, that essential justice requires prevention of the imposition of liability upon physicians who, because of the passage of time, have become disempowered to present meritorious defenses. At some point in time, claims must be held to have become barred. This fundamental proposition was first recognized by courts of equity in their conception and application of the doctrine of laches, and it is applied by courts of law under the requirements of relevant statutes of limitations. The Idaho legislature has prescribed that a cause of action for personal injury must be prosecuted within two years, and it has provided for no exception applicable to claims arising from malpractice of the medical arts. In *Billings* the Idaho Supreme Court has, in effect, extended the limitation period when the malpractice is the leaving of a "foreign object" in the patient's body. When we remanded this case after the first appeal, we, in effect, delegated to the district judge the duty of ascertaining whether or not the Idaho court would apply the same extension doctrine to a case of malpractice such as is before us now. The district judge, discharging his duty, has determined that the doctrine would not be so applied in the State of Idaho.

Analysis by a district judge of the law of the state in which he sits, his determination of the result which the highest court of that state would probably reach under the same facts, is entitled to great weight. Edwards v. American Home Assurance Company, 361 F.2d 622 (9th Cir. 1966). That determination "will be accepted on review *unless shown to be clearly wrong.*" Minnesota Mutual Life Insurance Company v. Lawson, 377 F.2d 525 (9th Cir. 1967); Bellon v. Heinzig, 347 F.2d 4 (9th Cir. 1965). (Emphasis supplied.) See Propper v. Clark, 337 U.S. 472, 486, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949).

We are not persuaded that, in its consideration of *Billings* and its determination that the discovery rule is not applicable to the present case, the District Court was "clearly wrong." On the contrary, we agree with the District Court.

Had the Idaho Supreme Court not harbored the intent to limit sharply the application of the discovery rule in malpractice cases, it would have been unnecessary for it to emphasize that the purpose of statutes of limitations "is to prevent fraudulent and stale actions from springing up after a great lapse of time * * *." It employed language which must be significant and clearly implies a limitation, namely, "These considerations are not present *in a foreign object case.*" 389 P.2d at 231. (Emphasis supplied.) Moreover, as we have seen, the Idaho court chose, in supporting its decision in *Billings,* to quote language from a New Jersey opinion, wherein the court, concerned with a situation involving surgical malpractice of the "foreign object" variety, carefully distinguished such a case from one which would "raise questions as to * * * credibility [or] rest on matters of professional *diagnosis,* judgment or discretion. * * *" 173 A.2d at 286. (Emphasis supplied.) The New Jersey court limited its holding expressly, as the Idaho court is believed by us to have done impliedly, to "this [foreign object] highly confined type of case." Ibid.

It is not our function, in a case such as this, to weigh opposing considerations of policy and then to select and further that policy which most persuasively appeals to us. But in deciding whether or not the court below was "clearly wrong" in its forecast of Idaho law, it is not inappropriate for us to remark upon certain considerations which may have

moved the Idaho court to employ the precise language which appears in *Billings*. Extension of the discovery rule to encompass a case of the type involved here would subject physicians to the possibility of liability, or at least to the embarrassment and expense of litigation, upon claims of mistaken diagnosis of any illness, however great may have been the lapse of time between the date of cessation of the doctor-patient relationship and the formal prosecution of the claim. The danger of "fraudulent and stale" claims, which the Idaho court recognized to be diminished in foreign object cases, is obviously enhanced when the claim of medical malpractice is predicated upon alleged misdiagnosis. In such a case, unlike the foreign object situations, not even the fact of injury can always be clear. Even in its present stage of advanced development, medicine is not an exact science. Symptoms and diseases thought at one time, even recently, to fall into one category are later discovered, through the evolution of the science, to fall into another. If the trier of fact should be convinced, upon the basis of new knowledge, that a mistaken diagnosis was made, the defendant's task of establishing that his conduct did not fall below the standard of care which prevailed in his profession at the time and place of the alleged error could prove insurmountable in the event of sufficient lapse of time.

■ We conclude that the District Court correctly gleaned the present intention of the Idaho Supreme Court not to apply the so-called discovery rule to medical malpractice suits resting upon the claim of mistaken diagnosis and treatment resulting therefrom.

■ Affirmed.[4]

4. There is no merit in other claims of error which appellant specifies. She complains that the granting of summary judgment deprived her of the right to trial by jury. Her position is that the evidence as to six factual issues upon which the district judge made findings, upon which findings he relied in granting summary judgment, was in conflict and should have been submitted to a jury for determination. Appellant correctly asserts that the function of the trial court on motion for summary judgment is merely to ascertain whether there are any genuine issues of material fact and not to undertake to resolve such issues. Neff Instrument Corporation v. Cohu Electronics, Inc., 269 F. 2d 668 (9th Cir. 1959). Five of the challenged findings, however, related to the problem of when appellant, in the exercise of reasonable diligence, should have discovered the alleged misdiagnosis. In the light of our ultimate conclusion, that determination is irrelevant. Appellant concedes in her brief that the sixth challenged finding "is, in and of itself, correct." If there was error, then, in not submitting these factual issues to a jury, it was harmless.

Appellant also attacks the District Court's conclusion that she *could* have, through the exercise of reasonable diligence, discovered the alleged malpractice at any time after the surgery. She is correct in her assertion that the relevant problem under the discovery rule is to ascertain when a plaintiff *should* have discovered, and not when he *could* have discovered, his cause of action. The dismissal did not rest upon that conclusion; hence, the error was harmless. We note, however, that the wording of the finding followed that of plaintiff's complaint and was perhaps induced by it. See footnote 1, supra.

Appellant's final contention is that the district judge erred in not holding that the statute of limitations was tolled because she was, until her divorce in August, 1959, a married woman. I.C. Section 5–230 provides:

"If a person entitled to bring an action, other than for the recovery of real property, be, at the time the cause of action accrued, either:

\*   \*   \*   \*   \*

4. A married woman, *and her husband be a necessary party with her in commencing such action;*

The time of disability is not a part of the time limited for the commencement of the action." (Emphasis supplied.) The argument is not well taken. Under Idaho law, a married woman is empowered, without joining her husband, to commence an action to recover damages for her own personal injuries and thereby avoid future bar of the statute of limitations. Muir v. City of Pocatello, 36 Idaho 532, 212 P. 345 (1922). Appellant was not, therefore, under such a disability as contemplated by section 5–230(4).

HAMLIN, Circuit Judge (dissenting).

I respectfully dissent.

I will attempt to briefly summarize my reasons therefor. This court stated in the first appeal (Owens v. White, 9 Cir., 342 F.2d 817 at 819) as follows:

> "Whether plaintiff's claim has accrued is a question of law [Chemung Mining Co. v. Hanley, 9 Idaho 786, 77 P. 226 (1904)], and like all issues of law must be resolved by the court even though this will require evidence."

My examination of the Chemung case convinces me that this case is not authority for the above statement. Chemung was concerned with two things: (1) Whether the court abused its discretion in refusing to permit the filing of an amended complaint, and (2) whether it was proper to grant a judgment on the pleadings in favor of the defendant where the defendant's answer had set up a defense of the bar of the statute of limitations. The court held that it was not an abuse of discretion to refuse to permit the amendment to the complaint but that it was error to grant judgment on the pleadings, because "the facts constituting that bar (of the statute of limitations) must be proven the same as any other facts of the case." (p. 228). That the special defense of the statute of limitations can be tried by a jury is indicated in the discussion in Calvin v. Thayer, 150 Cal.App.2d 610, 310 P.2d 59.

Upon the first appeal this court pointed out that the Idaho court in the Billings case had invoked the discovery rule. It pointed out that the Billings case dealt with a malpractice claim concerning the presence of a sponge alleged to have been carelessly left in the patient's body during a surgical operation, while the instant case is based upon a claimed negligent diagnosis. The court stated, "It is perhaps also true that the claim in a suit involving a foreign object as in Billings is more apt to be bona fide than one which will undoubtedly depend upon testimony or other indirect elements for proof. But this factual difference is not controlling. It merely relates to the manner of proof."

The opinion in the first appeal, while indicating that Idaho would invoke the discovery rule after the decision in Billings then went on to suggest that in invoking that rule "the Idaho courts would apply a concept akin to the equitable doctrine of laches to limit the discovery rule * * *." The opinion cites no authority for this statement and we have been unable to discover any.

I find nothing in the Billings case that supports this suggestion. While the facts in the Billings case show that it was a foreign object case I do not believe that the Idaho Supreme Court limited its findings to such a case. After discussing various rules, the court stated—

> "We will, therefore, adhere to the following rule: where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body."

The above rule shows when the accrual of the action occurs. Nowhere does that case state that such rule only applies to foreign object cases, or that it does not apply to negligent diagnosis cases. At another place in the decision in the Billings case (389 P.2d p. 231) the court states, "If one is unaware that he has any rights, it cannot be said that he is 'sitting' on them."

In California, where the discovery rule was adopted many years ago, many decisions have applied that rule to negligent diagnosis cases. Costa v. Regents of the University of California, 116 Cal. App.2d 445, 254 P.2d 85; Hemingway v. Waxler, 128 Cal.App.2d 68, 274 P.2d 699; Calvin v. Thayer, 150 Cal.App.2d 610, 310 P.2d 59.

I think that the opinion in the instant case is in error in holding in effect that the discovery rule would apply in Idaho in "foreign object" cases but not in negligent diagnosis cases. To me, there is no basis for such a distinction. One may be more difficult of proof than the other. In each case, however, the injury, if any, is a result of the negligence of the doctor, and the patient should have a right of action if he files such action within the proper time after the cause of action accrues.

After the reversal upon the former appeal, the district court decided the case upon a "balance of equities" doctrine which had not been mentioned in the opinion in the former appeal, and then decided that the "discovery rule" should not be applied in the case. In general, my reasons for dissenting in this case are as follows:

(1) I think the question of when the claim accrued should be determined as a fact in the case like other facts that are required to be established;

(2) I think there is no authority for applying the doctrine of laches in determining when the cause of action accrued;

(3) I think the proper rule is as stated in *Billings* as follows: "The cause of action does not accrue until the patient learns of or in the exercise of reasonable care and diligence should have learned" of the physician's negligence. In this connection I note that the district court in the judgment which is before us now found "that plaintiff *could* have by the exercise of due diligence discovered the alleged malpractice at any time after the surgery and treatment complained of." To me, the question is not when the plaintiff *could* have, by the exercise of diligence, learned of the alleged malpractice, but when the plaintiff "in the exercise of reasonable care and diligence *should* have learned" of it.[1]

(4) I think the district court was wrong in "balancing the equities";

(5) I think the trier of fact should determine whether, assuming the doctor's diagnosis in 1951 as to the malignant character of the tissue was in error, the making of an erroneous diagnosis was negligence in the light of the standard of the medical knowledge on this subject at that time and in that locality.

I would reverse and remand the action to the trier of fact to determine, *inter alia*, (1) when the cause of action accrued under the discovery rule as stated in *Billings;* (2) whether the action was brought within two years thereafter; (3) whether the doctor's diagnosis was incorrect; and (4) if so, whether such incorrect diagnosis was negligent according to the standard of the then medical knowledge in the locality where the physician practiced his profession.

---

1. In a federal tort claims action for negligent medical treatment this court stated: "There is no dispute that the claim accrued when the claimant knew or in the exercise of reasonable diligence should have known of the acts constituting the alleged malpractice." Hungerford v. United States, 307 F.2d 99 (9th Cir. 1962).