968 F.2d 1217
 61 USLW 2112
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jan L. WILSON; Emery C. Farris, III; and Rebecca Farris,
Plaintiffs-Appellants,
John D. Wilson, Plaintiff,
v.
The UPJOHN CORPORATION, Defendant-Appellee.
 Nos. 91-3670, 91-3682.
 United States Court of Appeals, Sixth Circuit.
 July 9, 1992.
 
 Before RYAN, BOGGS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiffs brought this suit against the Upjohn Corporation, seeking redress for injuries allegedly arising from their use of Halcion. Over two years after the initial complaint was filed, the district court granted summary judgment to Upjohn. The plaintiffs appeal, contending that they demonstrated the existence of a factual issue as to whether Upjohn fulfilled its duty to warn, and that they were not given a fair opportunity to pursue discovery below. We affirm.
 
 
 2
 * In 1987, Jan Wilson began taking Halcion, a tranquilizer made from triazolam, which belongs to a family of chemically-related medications called benzodiazepines and has been marketed in the United States by Upjohn Corporation since the early 1980s. Ms. Wilson claims that soon after she began taking Halcion, she suffered a number of debilitating symptoms, including anxiety, suicidal tendencies, severe depression, sleeplessness, and loss of appetite. As a result of these problems, she was hospitalized on three separate occasions. Some doctors believe that Halcion is responsible for such symptoms, which they call triazolam psychosis. On February 17, 1989, ABC broadcast a program concerning a woman acquitted of murder after her lawyer argued that she was under the influence of Halcion when she killed her mother. Ms. Wilson and her husband, John, saw the program and concluded that Ms. Wilson's problems began with her taking of Halcion. They contacted a lawyer and began investigating the possibility of pursuing a case against Upjohn. On May 8, 1989, the Wilsons filed a complaint in federal district court against Upjohn, asserting a number of claims arising from Upjohn's promotion and sale of Halcion. Meanwhile, Emery Farris took Halcion for his sleeping difficulties, and suffered symptoms similar to those reported by Ms. Wilson. Mr. Farris eventually learned of the possible dangers of Halcion from a newspaper story that mentioned the Wilsons' case. He and his wife, Rebecca, contacted the attorney who was representing the Wilsons. On August 14, 1989, the Farrises filed a complaint similar to that made by the Wilsons. The two cases were ultimately consolidated for purposes of discovery.
 
 
 3
 Both plaintiffs are from the Cincinnati area, and their complaints were filed in federal district court for the Southern District of Ohio. Soon after the plaintiffs filed their complaints, several law firms from other cities proposed changing the case to a class action, with Ms. Wilson and Mr. Farris as class representatives. The plaintiffs moved for class certification to accomplish this goal. However, in June 1990, one week before the plaintiffs had to respond to the defendants' motion for summary judgment, the out-of-town attorneys withdrew from the case for unknown reasons. In November 1990, the class action aspects of the complaint were dismissed, and the plaintiffs agreed to file a second amended complaint. After amendment and consolidation, the plaintiffs asserted the following claims: (1) negligence, (2) breach of implied warranty, (3) breach of express warranty, (4) strict liability in tort, (5) negligent misrepresentation, (6) constructive fraud, (7) actual fraud, (8) intentional infliction of emotional distress, and (9) loss of consortium.
 
 
 4
 Throughout the course of this litigation, the parties constantly disputed over discovery. After a number of motions and extensions of time concerning discovery and other issues, the district court granted the defendant's motion for summary judgment on July 2, 1991. The district court concluded that the only evidence introduced to support the plaintiffs' claims was the affidavits of two doctors, who expressed their beliefs that Mr. Farris and Ms. Wilson suffered symptoms caused by Halcion. The district court considered such evidence insufficient to survive a motion for summary judgment. It determined that the plaintiffs had "arguably established that there is a causal link between plaintiffs' use of Halcion and plaintiffs' psychological difficulties." However, it also found that the plaintiffs had "failed to produce even a shred of admissible evidence that Upjohn acted improperly or breached any warranties or duties whatsoever. Nor did the plaintiffs produce any admissible evidence that Halcion is defective in any way." Thus, the district court granted Upjohn's motion for summary judgment. This timely appeal followed.
 
 II
 
 5
 This court reviews a district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate where no genuine issue of material fact exists, and the movant should receive judgment as a matter of law. The court determines whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). "[I]nferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962)). The movant meets its burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). Once the movant has done so, the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).
 
 
 6
 On appeal, the plaintiffs addressed only the issues of negligence and strict liability in tort. According to Ohio law, a manufacturer is liable for compensatory damages only if the plaintiff can prove that the product was defective, and that the defect was a proximate cause of the harm suffered by the defendant. See Seley v. G.D. Searle & Co., 67 Ohio St.2d 192, 423 N.E.2d 831, 838 (1981). As noted above, the district court ruled that the plaintiffs had "arguably established" that Halcion was the proximate cause of their injuries, but found no evidence of wrongdoing by Upjohn. The plaintiffs contend that they raised an issue of material fact as to whether Upjohn had fulfilled its duty to warn of the dangers associated with Halcion. Under Ohio law, an "inadequate warning" constitutes a defect in the product, and failure to warn can support claims both of negligence and strict liability. See Crislip v. TCH Liquidating Co., 52 Ohio St.3d 251, 255, 556 N.E.2d 1177, 1181 (1990). "[W]here an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug." Seley, 423 N.E.2d at 838. "A reasonable warning not only conveys a fair indication of the nature of the dangers involved, but also warns with the degree of intensity demanded by the nature of the risk. A warning may be found to be unreasonable in that it was unduly delayed, reluctant in tone or lacking in a sense of urgency." Id. at 837. Whether a warning is "adequate" is a question of fact to be decided by a preponderance of the evidence. Id. at 836.
 
 
 7
 The plaintiffs rely upon several pieces of evidence submitted below in their attempt to demonstrate Upjohn's failure to warn. First, they refer to depositions of Mr. Farris's treating physicians. Although these doctors do not actually discuss the warning given by Upjohn, they describe talking to detail men from Upjohn who discussed Halcion with them, but did not describe its possible dangers. The plaintiffs contend that this testimony shows that Upjohn's representatives gave no warning of the possible side effects of Halcion. They also note the fact that the treating physicians continued to re-fill the plaintiffs' prescriptions on a long-term basis as further evidence of failed warnings. In fact, they claim, while Upjohn now states that Halcion should not be prescribed for long periods, it never gave such a warning to the plaintiffs' physicians.
 
 
 8
 Next, the plaintiffs invoke several affidavits taken from Dr. Thomas R. Kappeler, who examined Ms. Wilson. Dr. Kappeler stated that "it is my opinion, based upon a reasonable degree of medical certainty, that Halcion was the cause of Mrs. Wilson's emotional problems...." Furthermore, he believed that the physicians treating Ms. Wilson did not appreciate the seriousness of her dependency on Halcion. Describing her condition in 1987, he stated that "the extent of the patient's tolerance to benzodiazepines, specifically Halcion, was not recognized and no provision was made for a withdrawal schedule adequate to prevent a 'rebound' arousal (acute withdrawal producing psychotic symptoms)." The plaintiffs reason that Ms. Wilson's treating physicians could not recognize her dependency because Upjohn had failed to give a sufficient warning of the dangers of such a problem. Speaking of the early 1980's, Dr. Kappeler referred to dangers of amnesia caused by Halcion that were "dismissed lightly at the time"; the plaintiffs reason that insufficient warnings caused physicians to dismiss such dangers.
 
 
 9
 The plaintiffs also present an affidavit taken from Dr. James Titchener, who treated Mr. Farris. Dr. Titchener stated that "Mr. Farris almost from the outset of his being prescribed the medication in 1984 suffered severe side effects ... from the drug Halcion." As part of his affidavit, Dr. Titchener quoted an article in a medical journal that refers to the "myth that physicians need not worry about the problems of dependency when prescribing benzodiazepines." The plaintiffs reason that this "myth" was fostered and encouraged by Upjohn's failure to give adequate warnings of its product's dangers.
 
 
 10
 The plaintiffs also rely upon articles written by Dr. Anthony Kales, a professor and chair of the Department of Psychopharmacology at the Hershey Medical Center in Hershey, Pennsylvania. In these articles, Dr. Kales describes studies finding that next-day memory impairment occurred in 40% of those patients who took triazolam. The plaintiffs contend that Upjohn did not warn of such a serious danger. Finally, the plaintiffs present a detailed summary of medical skepticism surrounding Halcion, and cite a number of articles on the subject. They also make reference to the drug's history in Europe, where it has been banned in several countries.
 
 
 11
 We reject the plaintiffs' argument that they have presented enough evidence to overcome a motion for summary judgment. Even if they have met their burden of showing proximate cause, they have submitted no admissible evidence to demonstrate that Upjohn's warning was inadequate. We first note that the issue is not whether the plaintiffs were given sufficient warning, but whether such a warning was given to their doctors. "[A] warning is 'adequate' ... where, under all the circumstances, it reasonably discloses to the medical profession all risks inherent in the use of the drug which the manufacturer knew or should have known to exist." Seley v. G.D. Searle & Co., 67 Ohio St.2d 192, 423 N.E.2d 831, 836-37 (1981) (emphasis added); see also White v. Wyeth Lab., Inc., 40 Ohio St.3d 390, 398, 533 N.E.2d 748, 755 (1988). This "learned intermediary" rule has been adopted by several other courts. See, e.g., Reyes v. Wyeth Lab., 498 F.2d 1264, 1276 (5th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 687 (1974); Hill v. Squibb & Sons, 181 Mont. 199, 592 P.2d 1383, 1387-88 (1979).
 
 
 12
 In this case, the plaintiffs have failed to present evidence that the medical profession was not given sufficient warnings about Halcion. The depositions of Mr. Farris's treating physicians cited by the plaintiffs fail to demonstrate an inadequate warning by Upjohn. In any event, these statements indicate only that the physicians received no warning from Upjohn's detail men, but obviously detail men do not represent Upjohn's only method of providing warnings. Moreover, the package literature for Halcion stated that it was to be used for the "short term management" of insomnia, refuting the plaintiffs' contention that Upjohn never indicated that Halcion should not be prescribed for long periods of time.
 
 
 13
 The affidavits of Dr. Kappeler and Dr. Titchener also fail to provide sufficient support for the plaintiffs' claims. While Dr. Kappeler described Halcion's effect on Ms. Wilson, he did not discuss Upjohn's warning, and never demonstrated that it was flawed. The inability of Ms. Wilson's physicians to recognize her dependence on Halcion could have many possible causes, and does not necessarily reflect a lack of warnings. The same analysis applies to the medical community's dismissal of dangers from amnesia from Halcion. Dr. Titchener's affidavit also fails to support the plaintiffs. Dr. Titchener's comment regarding a "myth" about dependency associated with benzodiazepines fails even to mention Halcion, much less criticize the warning provided by Upjohn. The "myth" decried by Dr. Titchener may have existed even in the face of innumerable warnings, if such warnings were disregarded by the medical community.
 
 
 14
 The numerous articles by Dr. Kales and others submitted by the plaintiffs are not properly before this court. Dr. Kales was never admitted as an expert witness, and none of the articles in question was supported by depositions and affidavits. Thus, these articles cannot be considered on summary judgment. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). The various articles cited by the plaintiffs are clearly inadmissible hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). While there are numerous exceptions to this basic rule, none of them is applicable to this case. The plaintiffs argue that the articles could be considered under the "learned treatise" exception to hearsay found in Fed.R.Evid. 803(18), but the rule limits the use of such treatises "[t]o the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination...." Because the articles were not introduced under such circumstances, they fail to qualify under this exception. See also Fowle v. C & C Cola, A Div. of ITT-Continental Baking Co., 868 F.2d 59, 67 (3d Cir.1989) ("The substance of this report was not sworn to by the alleged expert. Therefore, the purported expert's report is not competent to be considered on a motion for summary judgment").
 
 
 15
 This court is aware of the controversy surrounding Halcion, and of the fact that many scientists consider it to be unsafe. But courts of appeal are limited in their scope of review. "[I]t is well established that the obligation of this Court is to look at the record before the District Court at the time it granted the motion [for summary judgment], not at some later point." Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1035-36 (D.C.Cir.1988). "Papers not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal." Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir.1988). In this case, the plaintiffs simply have failed to submit sufficient admissible evidence to overcome Upjohn's motion for summary judgment.
 
 III
 
 16
 The plaintiffs argue that in order to prove their case, discovery is essential to learn exactly what Upjohn knew or should have known about the side effects of Halcion. Furthermore, summary judgment should be granted only "after adequate time for discovery and upon motion," Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). The plaintiffs maintain that they never had a proper opportunity to conduct necessary discovery, and accuse Upjohn of using its superior resources to thwart their attempts to do so.
 
 
 17
 Having reviewed the record, we believe that the district court gave the plaintiffs a sufficient opportunity to develop their case. Although Upjohn moved for summary judgment on March 5, 1990, the district court did not rule on this motion until July 1991. Furthermore, a review of the record indicates clearly that Upjohn's tactics, while aggressive, did not prevent the plaintiffs from conducting discovery. In fact, the plaintiffs seem to have contributed to most of the difficulties in district court. In its order granting summary judgment to Upjohn, the district court cited 28 U.S.C. § 1927, which provides for fines for any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." The court then noted:
 
 
 18
 In the case at bar, plaintiffs' counsel repeatedly disobeyed this Court's orders and those of [the Magistrate Judge]. In addition, plaintiffs' counsel repeatedly filed unsubstantiated accusations against the defendant and its counsel and probably lacked a proper basis for plaintiffs' complaint prior to filing it. In fact, this case presents precisely the situation to which 28 U.S.C. § 1927 was directed.
 
 
 19
 The district court decided not to levy such sanctions, however, because of the "enormous demands" faced by the plaintiffs' counsel. We agree with this description of the procedural history of the case, and also note that the district court had previously imposed limited sanctions on the plaintiffs. We therefore conclude that Upjohn cannot be held responsible for the plaintiffs' inability to present a stronger case.
 
 IV
 
 20
 Finally, as noted above, the district court affirmed an order of the magistrate judge that required the plaintiffs and their counsel to pay "Upjohn's reasonable attorney's fees associated with pursuing its discovery requests to determine whether plaintiffs consulted with any expert before filing their complaint." Upjohn filed an application to determine the amount of the fees, but the district court dismissed this case before it considered this application. We therefore grant Upjohn's request that we remand the case for a ruling on its fee applications. The judgment of the district court is AFFIRMED, and the case is REMANDED for the limited purpose of determining appropriate sanctions.