GAAR THOMAS, PLAINTIFF AND APPELLANT,. v. GORDON MERRIAM, M. D., DEFENDANT AND RESPONDENT.

No. 9772.

Submitted January 12, 1959.   Decided March 23, 1959.
Rehearing Denied   April 20, 1959.
337 Pac. (2d)   604.

MR. JUSTICE CASTLES and THE HONORABLE JAMES T. SHEA, District Judge, dissented.

Colgrove & Brown, Miles City, for appellant.

Roland V. Colgrove, Miles City, argued orally.

Brattin, Habedank & Cumming, Sidney, for respondent.

Otto F. Habedank, Sidney, argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal by plaintiff from a judgment of nonsuit. The action is for malpractice against Dr. Gordon Merriam. Pending the action Dr. Merriam died and by stipulation his estate was substituted as party defendant.

Plaintiff in the year 1951 was a resident of Fairview, Montana. At the age of 67 or 68, just before Christmas in 1951 he became ill. Dr. Merriam, a physician practicing medicine in Fairview was called to attend him. Plaintiff was first taken to the Sidney hospital. About a day later, at Dr. Merriam's suggestion, plaintiff entered the Deaconess Hospital in Billings, where he was treated by Dr. A. J. Movius, Jr. According to plaintiff's exhibit No. 1, Dr. Movius after giving plaintiff a physical examination diagnosed his case as follows:

"Patient sent here for treatment because of distension, nausea & Vomiting & Dehydration. Treated last few days by L. M. D. in Fairview. Had incarcerated hernia 3-4 days ago and above distension etc. followed. Hernia was reduced with difficulty several hrs. after onset."

Plaintiff remained in the Billings hospital only one night and then returned to his home in Fairview. Sometime after the first of January 1952, plaintiff suffered severe abdominal pain. Dr. Merriam again sent him to the hospital in Billings, which he entered on January 15, 1952, and where he underwent operations for gallstones and incarcerated hernia. The doctor who performed the operation in Billings was Dr. A J. Movius, Jr., who was not a witness at the trial.

According to the testimony of Dr. Harper, a gallstone was

removed at that time, but the gall bladder was not, probably because it was inflamed and removal involved too great a risk to the patient. Dr. Harper also testified that plaintiff was operated on again about two or three days following the gallstone operation for a bowel obstruction, or hernia, which he said was not involved in this case "only to the extent that he had it and that it would pull him down further."

Plaintiff was discharged from the Billings hospital on February 3, 1952, and returned to his home in Fairview. He became ill again, experiencing severe pain, and was taken to the Sidney hospital on March 12, 1952. Dr. Harper was again called into the case, and performed another gallstone operation, but because of the infection remaining he did not remove the gall bladder, but performed essentially the same operation as the one done for gallstones in Billings. Dr. Harper placed a tube from the gall bladder to the outside body wall. Plaintiff was discharged from the Sidney hospital on March 17, 1952. A discussion between doctor and patient was then had about removing the gall bladder when the patient got in shape to do so.

Following plaintiff's discharge, his condition improved to the extent that on March 31, Dr. Harper performed yet a fourth operation, removing the gall bladder and placing a "T" tube in the common duct. On April 7, plaintiff was discharged from the hospital and returned to his home in Fairview. Although Dr. Harper performed the operation, Dr. Merriam assisted and continued to act as plaintiff's doctor in postoperative care and treatment.

Two days later, on April 9, plaintiff went from his home in Fairview to Dr. Merriam's office in Fairview to have the "T" tube irrigated. Following the irrigation by Dr. Merriam, the plaintiff became desperately ill. Dr. Merriam continued to treat plaintiff at his home, giving him sedatives until April 18 at which time Dr. Harper was called and plaintiff was then taken to the Sidney hospital where he remained until May 1

when he was transferred to the Billings hospital. There he was examined by Dr. Movius, Jr., who made this report:

"Patient was operated here for empyema of the gall bladder following incarcerated hernia January 1952 by me. Became ill latter part of March and Dr. Harper re-drained the gall bladder and put in a "T" tube although patient had no jaundice. Two weeks ago Dr. Merriam irrigated the "T" tube with 50% alcohol and 50% ether mixture and patient has been desperately ill since with jaundice and distension."

Plaintiff remained in the Billings hospital until June 22 after which date he returned to his home. His mental condition changed during his prolonged illness and he was unable to be in court for the trial. At the time of trial he was 72 years of age.

As previously related, Dr. Merriam died prior to the trial. Dr. Movius of Billings did not testify either in person or by deposition. Dr. Harper was called as plaintiff's witness, and he provided all of the medical information other than the hospital records.

At the conclusion of plaintiff's case, defendant made a motion for judgment of nonsuit upon the ground that the evidence of plaintiff failed to show that the irrigation of a "T" tube following gall bladder surgery with a solution of ether and alcohol was not a standard, accepted medical practice in the locality of Fairview, at the time such irrigation was had, and hence that there was no competent, sufficient evidence to sustain the allegations of the complaint.

The motion was granted and judgment entered in favor of defendant. The sole specification of error is the granting of defendant's motion for nonsuit and the entry of judgment for defendant.

The gravamen of the complaint was that Dr. Merriam did something that a physician of ordinary skill, care and diligence would not have done and that, as a result thereof, plaintiff was injured and damaged.

More specifically, the plaintiff urges that a 50 percent alco-

hol, and a 50 percent ether solution was used improperly in irrigating the ''T'' tube so that the solution passed through the ''T'' tube into the common duct and then into plaintiff's liver. Plaintiff asserts that his evidence was sufficient to make out a case for the jury from which the jury could find that the ''improper use'' consisted of irrigating the ''T'' tube under pressure and that the solution would cause the sphincter muscle to close, forcing the solution up into the liver causing damage.

Dr. Harper, a witness for plaintiff, testified a 50 percent alcohol-ether solution to irrigate a ''T'' tube was an accepted medical practice in Fairview, but that to irrigate the liver (as distinguished from the ''T'' tube) with that solution was not accepted medical practice anywhere. He at first testified that in his opinion it was impossible to irrigate the liver but he later said that the alcohol and ether would cause the sphincter muscle to close and if the gall bladder were out, as it was here, the solution would have no place to go but back up into the liver. Plaintiff's daughter, Marjorie Thorson, testified in part:

''Q. Do you know for what reason he [plaintiff] went [to Dr. Merriam's office] this time? A. He went to have his tube irrigated. * * *

''Q. Did Dr. Merriam come over afterwards? A. Yes, I would say he came over about every day.

''Q. During this time did you have any conversation with him there? A. I did.

''Q. What was it? A. I asked him one day why my dad was having all this pain after the irrigation and before he was all right, and he said he irrigated the liver through the 'T' tube with pressure and that is what caused the pain and irritation, but in a few days he would be all right.

''Q. Now did he say anything about the solution used? A. Yes, he said he used alcohol and ether.''

The rule which we must apply in testing the sufficiency of the evidence on motion for nonsuit was stated in Loudon v. Scott, 58 Mont. 645, 653, 194 Pac. 488, 490, 12 A.L.R. 1487, as follows:

"It is the rule in this jurisdiction that a case should never be withdrawn from the jury unless it appears as a matter of law that a recovery cannot be had upon any view of the facts which the evidence reasonably tends to establish (Stewart v. Stone & Webster Engineering. Corp., 44 Mont. 160, 119 Pac. 568); but whenever there is not any evidence in support of plaintiff's case, or the evidence is so unsubstantial that the court would feel compelled to set aside a verdict, if one should be returned for plaintiff, a nonsuit should be granted. Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 Pac. 458, Ann. Cas. 1914B, 468."

We recently stated the rule in Burns v. Fisher, 132 Mont. 26, 29, 30, 313 Pac. (2d) 1044, 1046, as follows: "The rule, however, is well established that in reviewing the court's action in sustaining a motion for nonsuit we must deem every fact true which the evidence tends to prove and interpret the evidence in the light most favorable to the plaintiff. [Citing cases.] Yet, if the evidence is such that a recovery cannot be had on any reasonable view, it is proper for the court to take the case from the jury. [Citing cases.]" Likewise we must view the evidence in the light most favorable to plaintiff even though the evidence of his own witnesses be conflicting or contradictory. Le Compte v. Wardell, Mont. 1958, 333 Pac. (2d) 1028, and cases therein cited.

In the light of the foregoing rules, the court erred in sustaining the motion for nonsuit. The evidence summarized above was sufficient to sustain a verdict for plaintiff if one should be returned for him. It is suggested that Mrs. Thorson was an interested witness, she being the daughter of plaintiff. This is true but her veracity, as affected by her interest, was still a question for the jury, since the jury are the exclusive judges of the credibility of the witnesses. R.C.M. 1947, section 93-401-4.

In reliance upon the case of Loudon v. Scott, supra, defendant contends that plaintiff may not make out a case for the

jury without submitting medical evidence showing a want of proper care by defendant.

In the Loudon case, the court considered evidence of an admission made by the defendant doctor but held that the admission fell short of showing negligence.

Here the admission made by Dr. Merriam to Mrs. Thorson was sufficient to show negligence. It was an admission that he irrigated the liver through the "T" tube with pressure using a solution of ether and alcohol, which was shown by medical testimony to be contrary to the accepted medical practice. Negligence of a doctor like any other issue may be shown by his own admissions. Lashley v. Koerber, M. D., 26 Cal. (2d) 83, 156 Pac. (2d) 441; Bungardt v. Younger, 112 Okl. 165, 239 Pac. 469; Allen v. Giuliano, 144 Conn. 753, 135 A. (2d) 904.

Whether negligence in a malpractice case may be shown otherwise than through medical evidence need not be considered here.

Likewise it is contended that the proof fails to show the amount of pressure used or the amount of solution used for the irrigation.

The proof did show that the deciding factor in plaintiff's prolonged hospitalization was the irrigation in question. The proof tended to show sufficient facts to warrant submission of the case to the jury.

The motion for nonsuit should have been denied.

The judgment is reversed and the cause remanded for trial.

MR. JUSTICES ADAIR and BOTTOMLY, and THE HONORABLE JAMES T. SHEA, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON, concur.

MR. JUSTICE CASTLES:

I dissent.

Though I feel that the majority opinion has correctly stated the law, I do not feel that the law and facts have been properly related and I therefore feel that the result reached is incorrect.

The plaintiff's medical expert, Dr. Harper, made it clear that (1) a 50 percent alcohol-ether solution was a medically accepted mixture for irrigating a "T" tube at the time in the plaintiff's locality; (2) that to irrigate the liver (as distinguished from the "T" tube) with such a solution or any other solution was not a medically acceptable practice; and (3) that in his opinion *the plaintiff's liver was not and could not have been irrigated.*

By cross-examination of his own witness, Dr. Harper, in regard to hypothetical questions unsupported by the evidence, plaintiff's counsel insisted on securing answers relative to the possibility and impropriety of irrigating the liver. This he did in spite of repeated protests from his witness that the liver of Mr. Thomas was not irrigated; and that it was impossible in the opinion of the witness, for the liver itself to be irrigated.

Dr. Harper admitted that if the sphincter muscle were to remain closed tightly enough no fluid could pass into the bowel. He also said, however: "Eventually this sphincter will release and the solution will go down." A proper answer to this question required certain facts as to pressure, amount of solution, duration, and the syringe used, none of which facts were established in this case by any evidence, substantial or otherwise.

The only evidence contrary to the doctor's opinion was that elicited on examination of the plaintiff's daughter. Testifying with regard to a conversation held between herself and Dr. Merriam concerning her father's condition after the irrigation she said, "I asked him one day why my dad was having all this pain after the irrigation and before he was all right, and he said he *irrigated the liver through the 'T' tube with pressure* and that is what caused the pain and irritation but in a few days he would be all right."

It is significant that this conversation took place four years prior to the trial and that the witness is an interested lay person. In addition, the anatomical knowledge needed to speak intelligently on the matters involved here is more than ordi-

narily complicated. At the trial, the distinctions between the gall bladder, liver, ducts, sphincter, etc., were presented in detail through the use of complex medical charts.

The standard of care of a doctor and whether he exercises such care can only be established by testimony of experts in the field unless his negligence can be demonstrated by facts which can be evaluated by resort to the common knowledge possessed by a layman. Schumacher v. Murray Hospital, 58 Mont. 447, 193 Pac. 397; Loudon v. Scott, 58 Mont. 645, 653, 194 Pac. 488, 12 A.L.R. 1487. The same rule is set forth clearly in Ayers v. Parry, 3 Cir., 1951, 192 F. (2d) 181, 184, 185, where it is stated that:

"Occasionally expert testimony is not required where an injury results to a part of the anatomy not being treated or operated upon and is of such character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves. This situation arises when an ulterior act or omission occurs, the explanation of which does not require scientific opinion. [Citing authorities.] But where, as here, an injury to healthy tissue within the region of treatment constitutes an occurrence beyond the realm of the knowledge and experience of laymen, the issue of negligence with respect to that injury must be determined by expert testimony."

Applied to the facts of the case at hand, I believe the rules stated in the Schumacher, Loudon, and Ayers cases, supra, require that the plaintiff's complaint be supported by expert testimony, not just that of a lay witness. This support was totally lacking, in fact, the plaintiff's medical witness gave it as his opinion that the plaintiff's liver was not and could not have been irrigated as asserted by the lay witness.

With the facts of the case in such a state, I fail to see how the district judge could do anything but grant a nonsuit.

THE HONORABLE JAMES T. SHEA, District Judge:

I concur in the foregoing dissenting opinion of MR. JUS-

TICE CASTLES. With all due respect to the majority opinion I feel this case comes within the rule announced in Schumacher v. Murray Hospital, 58 Mont. 447 at page 464, 193 Pac. 397, at page 402, wherein this court said: "There can be no question that recovery could not be had without expert testimony supporting the charge of malpractice." A careful study of the entire evidence of Dr. Harper, a witness called on behalf of the plaintiff, discloses it was the belief of the witness that the liver was not and could not have been irrigated. It was apparent the witness, Dr. Harper, did not testify as anticipated by counsel for plaintiff, whereupon the plaintiff's counsel requested the right to and was granted the privilege of asking leading questions. He was the only expert witness in the case. However, taken by all 4's, his testimony was of such character that in the opinion of the writer of this concurring dissenting opinion the lower court was correct in refusing to allow the case to go to a jury. The daughter of the plaintiff testified that Dr. Merriam had irrigated the liver through the "T" tube with pressure using a solution of ether and alcohol. She testified that Dr. Merriam, in a conversation with him, had so stated. While no objection was made to this testimony, still it would appear that without a proper foundation for such testimony, it would be incompetent under the provisions of subdivision 3 of Section 93-701-3, R.C.M. 1947, commonly known as the "dead man's statute." If this case were submitted to the jury under the medical testimony submitted, a jury could do nothing but indulge in conjecture and surmise. This, of course, should never be allowed.