No. 92-562

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ROBERT ZIMMERMAN,

       Plaintiff and Appellant,

   -vs-

G.D. ROBERTSON, D.V.M.,
d/b/a BOZEMAN VETERINARY
HOSPITAL,

       Defendant and Respondent.



FILED

JUN 21 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Jerrold L. Nye; Nye & Meyer, Billings, Montana

      For Respondent:

         Geoffrey R. Keller; Matovich, Addy & Keller,
Billings, Montana

Submitted on Briefs:  May 20, 1993

Decided:  June 21, 1993

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Robert Zimmerman appeals from a judgment on directed verdict entered in favor of G.D. Robertson by the Thirteenth Judicial District Court, Yellowstone County. We affirm.

We restate the issues on appeal as follows:

1. Is expert testimony required in a negligence action against a veterinarian?

2. Did the defendant's testimony constitute sufficient evidence of deviations from the standard of care to enable the plaintiff to withstand a directed verdict?

3. Did the District Court abuse its discretion in refusing to admit testimony regarding whether the defendant obtained the informed consent of the horse's owner prior to surgery?

Robert Zimmerman placed a colt in the care of Sarah Vaessen at the Bridger Canyon Stallion Station (BCSS) in March of 1991. In early May, Vaessen contacted veterinarian G.D. Robertson with regard to castration of a number of colts, including Zimmerman's. Robertson discovered that Zimmerman's colt was cryptorchid (one retracted testicle); the colt was transported to Robertson's clinic where cryptorchid surgery and castration was performed.

The colt was returned to the BCSS in mid-May. On May 24, 1991, Robertson was called to treat the colt for an upper respiratory infection. He treated the colt with antibiotics daily through the end of May; the infection appeared to be responding.

To facilitate the healing process, Robertson applied Dermago 2 to the surgical site on June 7. He was called back to the BCSS

2

on June 19 regarding an infection at the surgical site; the colt was transported back to Robertson's clinic. Robertson treated the colt with antibiotics, other medications and drains. The colt died on October 6, 1991. An autopsy was performed and a large abscess was discovered in the spleen; in addition, streptococcus zooepidemicus bacteria was isolated.

Zimmerman filed a complaint against Robertson claiming negligence in both the surgical procedure and post-surgery treatment. A jury trial began on October 5, 1992. Zimmerman testified and also called Vaessen and Robertson as witnesses. Robertson moved for a directed verdict at the close of Zimmerman's case. The District Court granted the motion on October 6, concluding that Zimmerman had failed to provide necessary expert testimony. Zimmerman appeals.

Is expert testimony required in a negligence action against a veterinarian?

Zimmerman contends that expert testimony should not be required in an action against a veterinarian. We disagree.

We have not previously addressed the specific question of whether expert testimony is required in a negligence action against a veterinarian in Montana. In Carlson v. Morton (1987), 229 Mont. 234, 745 P.2d 1133, however, we discussed the elements a plaintiff must prove in any professional negligence action, stating that in such actions "[n]egligence cannot be inferred from the simple fact that a loss occurred." Carlson, 745 P.2d at 1136 (citations omitted). We went on to observe that, while the field of legal

malpractice was relatively new in Montana, it was undisputed that expert testimony supporting a departure from "the prevalent standard of medical care" was required in medical malpractice actions. Carlson, 745 P.2d at 1136. Indeed, by that time, the necessity of expert testimony to establish the standard of care had been extended to professional negligence actions against dentists, orthodontists, manufacturers of pharmaceuticals, and abstractors of title. Carlson, 745 P.2d at 1136-1137 (citations omitted). We extended that requirement to actions against attorneys.

The rationale for requiring expert testimony in professional negligence actions has been summarized by Professors Prosser and Keeton:

> Professional persons in general, and those who undertake any work calling for special skill, are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability. Most of the decided cases have dealt with surgeons and other doctors, but the same is undoubtedly true of dentists, pharmacists, psychiatrists, veterinarians, lawyers, architects and engineers, accountants, abstractors of title, and many other professions and skilled trades.
>
> . . .
>
> Since juries composed of laymen are normally incompetent to pass judgment on [such] questions . . . it has been held in the great majority of malpractice cases that there can be no finding of negligence in the absence of expert testimony to support it. . . .

Carlson, 745 P.2d at 1137, citing Prosser and Keeton on The Law of Torts, § 32, 5th Edition, (1984).

As we did in Carlson in a professional negligence action against an attorney, we conclude here that expert testimony is necessary to establish the applicable standard of care in an action

4

against a veterinarian which arises from the veterinarian's professional capacity. Matters concerning the standard of care owed by a veterinarian during and after surgery are outside the common experience and knowledge of lay jurors; expert testimony is necessary to assist them in resolving such cases.

Our conclusion on this issue was clearly foreshadowed in Carlson. We note, as well, that other jurisdictions have adopted the expert testimony requirement in veterinary negligence actions. In Utah, for example, expert testimony is required to show that a veterinarian did not exercise the care and diligence ordinarily exercised by skilled veterinarians doing the same type of work in the community, and that the failure caused the injury. Posnien v. Rogers (Utah 1975), 533 P.2d 120, 121-122. See also 71 A.L.R.4th 811, Veterinary Malpractice, 823-825.

Zimmerman's argument that differences in training, conditions of practice and expected standards between veterinary doctors and physicians weigh against requiring expert testimony in negligence actions against veterinarians is not persuasive. Requiring expert testimony is not the equivalent of applying the same standards to veterinarians as are applied to physicians. Indeed, expert testimony regarding the standard of care owed by a veterinarian may reflect that the appropriate standard of care for veterinarians is significantly less than that required of physicians. We do not determine the appropriate standard of care merely by requiring expert testimony on the subject.

Did the defendant's testimony constitute sufficient evidence

5

of deviations from the standard of care to enable the plaintiff to withstand a directed verdict?

Zimmerman argues that Robertson's own testimony established deviations from the applicable standard of care and that, on that basis, the District Court erred in directing a verdict for Robertson. We disagree.

Zimmerman advances "admissions" by Robertson that his treatment of the colt fell below the standard of care in several regards. First, he quotes certain testimony with regard to the issue of informed consent. On the basis of our discussion and conclusion on Issue 3 below, we do not review this testimony.

In addition, Zimmerman contends that Robertson admitted substandard care with regard to the use of certain medications and drains and his failure to obtain a culture or other determination of the type of bacteria in the abscess. Zimmerman asserts that these "admissions" were sufficient to withstand a directed verdict.

We have recognized the "defendant's admissions" exception to the expert testimony requirement in several professional negligence cases. We acknowledged, but refused to apply, the exception in Dalton v. Kalispell Regional Hosp. (Mont. 1993), 846 P.2d 960, 50 St.Rep. 54; Hunter v. Missoula Community Hosp. (1988), 230 Mont. 300, 750 P.2d 106; and Hill v. Squibb & Sons, E.R. (1979), 181 Mont. 199, 592 P.2d 1383. In Thomas v. Merriam (1959), 135 Mont. 121, 127, 337 P.2d 604, 607, we applied the exception where the physician's admissions to a member of plaintiff's family as to the procedures he followed were sufficient to establish a deviation

6

from the standard of care.

The case before us is distinguishable from Thomas. Here, Robertson testified that his use of certain medications was not improper; similarly, he testified that it was not improper not to obtain a culture on the bacteria present. Finally, Robertson testified that his suction draining of the abscess prior to actually inserting drains--which he did in August and September--constituted appropriate treatment.

Robertson's testimony was that he believed his treatment and care of the colt, including both the surgery and the post-surgical treatment, fell within the applicable standard of care for veterinarians in the Bozeman area. We conclude that the "defendant's admissions" exception to the expert testimony requirement in professional negligence actions is not applicable here. Zimmerman having elicited no other expert testimony regarding deviations from the standard of care, we hold that the District Court did not err in directing a verdict for Robertson based on the absence of required expert testimony.

Did the District Court abuse its discretion in refusing to admit testimony regarding whether the defendant obtained the informed consent of the horse's owner prior to surgery?

During trial, Zimmerman attempted to question Robertson on the subject of whether Robertson had obtained his informed consent to the allegedly risky cryptorchid surgical procedure. On the basis of the pleadings alleging negligence during the surgery and the post-surgical treatment, the District Court sustained defense

counsel's relevancy objections. Zimmerman argues that he was entitled to pursue the subject and that the District Court's refusal to admit the testimony warrants reversal.

Rulings on the admissibility of evidence are within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. Bache v. Gilden (1992), 252 Mont. 178, 181, 827 P.2d 817, 819. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. Relevant evidence generally is admissible; "[e]vidence which is not relevant is not admissible." Rule 402, M.R.Evid.

Zimmerman's complaint alleged negligence by Robertson during two stages of his treatment of the colt: 1) that, as a result of his negligent and careless castration procedure, infection set in; and 2) that he failed to promptly and properly treat the infection. The negligence was alleged to be the cause of the colt's death and Zimmerman's monetary damages. It is undisputed that the complaint was sufficient to state claims for relief for professional negligence under Rule 8(a), M.R.Civ.P.

The parties and the District Court entered into a Pretrial Order (PTO) on September 24, 1992, some ten days prior to trial. "Plaintiff's Contentions" in the PTO centered on Zimmerman's allegations that the surgical procedure was done under improper and unsanitary conditions, that conditions in the recovery area also were improper and unsanitary, that infection developed at the

8

surgical site as a proximate result of those conditions, and that the colt died as a result of Robertson's failure to properly care for it.

In addition, Zimmerman set forth his "Plaintiff's Issues of Fact" as follows in the PTO:

> The following issues of fact, and no others, remain to be litigated upon the trial.
> 1. The nature and condition of the area where the castration/surgery was performed and its level of sanitation.
> 2. The nature and condition of the area in which the horse was placed to recover from the castration/surgery.
> 3. Whether the lack of sanitation and/or nature of the surgical and recovery areas were the probable cause of the infection to the surgical/castration area and/or the respiratory infection.
> 4. The effect of the respiratory infection on the infection in the surgical/castration area.
> 5. The nature and extent of treatment of infection after it was discovered and care given by Defendant after the infection was discovered.
> 6. The nature and extent of the loss suffered by Plaintiff as a result of the loss of the horse.

Here, Zimmerman set forth his factual contentions and factual issues remaining for trial with some particularity. Those factual issues requiring litigation corresponded to the two areas of negligence alleged in the complaint, namely, the surgical care and post-surgical treatment.

A pretrial order controls the subsequent course of the action. Rule 16(e), M.R.Civ.P. Indeed, the PTO in this case specifically provided that it would govern the course of trial. The purpose of pretrial orders is to prevent surprise, simplify the issues and permit counsel to prepare their case for trial on the basis of the pretrial order. Workman v. McIntyre Const. Co. (1980), 190 Mont.

9

5, 617 P.2d 1281.

Here, nothing in the pretrial order raised as a factual issue to be litigated the matter of an alleged failure to obtain Zimmerman's informed consent prior to the surgery. Under these specific circumstances, testimony regarding that alleged failure was irrelevant to the factual issues identified by Zimmerman himself in the PTO; it did not tend to make the existence of any fact of consequence to the determination of Robertson's negligence during either the surgery or the post-surgery period more or less probable. Permitting the introduction of this new factual matter, first raised during trial, would undermine the purposes pretrial orders are intended to serve.

Citing numerous cases, Zimmerman argues that the failure of a doctor to obtain proper consent prior to medical treatment is malpractice. As set forth above, however, testimony relating to informed consent simply was not related to his specified allegations of negligence.

Furthermore, Zimmerman relies primarily on Canterbury v. Spence (D.C.Cir. 1972), 464 F.2d 772; and Scott v. Bradford (Okla. 1979), 606 P.2d 554, for the necessary elements of a lack of informed consent action. We need not address here the substantive questions relating to such an action in Montana. We note only that the cases generally support the proposition that a medical malpractice claim premised on a theory of lack of informed consent is a separate cause of action rather than an "element" in an otherwise specifically alleged claim of professional negligence, as

10

Zimmerman asserts. In Canterbury, the plaintiff sought personal injury damages based, alternatively, on alleged surgical negligence, alleged negligence in post-operative care, and an alleged negligent failure by the doctor to disclose the risks inherent in the operation. Canterbury, 464 F.2d at 776. Similarly, in Scott, the Oklahoma Supreme Court had before it a claim that the defendant failed to advise of the risks involved in, or available alternatives to, surgery; it set forth the elements that a plaintiff in a medical malpractice action based on a theory of lack of informed consent "must allege and prove." Scott, 606 P.2d at 559 (emphasis added).

These cases support our conclusion that Zimmerman did not sufficiently raise the informed consent issue prior to trial in either his pleadings or the pretrial order. We hold that the District Court did not abuse its discretion in refusing to admit testimony regarding whether the defendant obtained the informed consent of the horse's owner prior to surgery.

AFFIRMED.

_____
Justice

We concur:

_____
Chief Justice

_____

11

Justices

12

Justice Terry N. Trieweiler specially concurring.

Based on the unique facts and the available record in this case, I concur with the result of the majority opinion, although I do not agree with all that is said in that opinion.

I would especially caution Montana practitioners not to draw unwarranted conclusions that this case establishes any rules for pleading or procedure.

The Montana Rules of Civil Procedure require only notice pleading; and there is no requirement that the facts alleged in a pretrial order be any more specific than those alleged in a complaint.

In the typical professional negligence claim, it is sufficient that the plaintiff allege that the defendant was negligent. It is up to the defendant through the use of discovery to define the specific bases for that general allegation. In this case, we have no record before this Court of what, if any, discovery was conducted by either party. In addition, plaintiff chose, although he was not required to do so, to very specifically articulate each factual basis for his claim of negligence in the pretrial order. Without knowing more about the extent of discovery, and based simply on the limited record before this Court, it is reasonable to conclude, based on plaintiff's affirmative allegations, that defendant was surprised when the issue of informed consent was raised for the first time during trial. Under these limited circumstances, I conclude that the District Court did not abuse its discretion by excluding evidence on the issue of informed consent.

However, by concurring in this opinion, I do not intend to in any way add to the present requirements for pleading and proving claims of professional, or any other type of, negligence. Neither do I intend to lessen the burden on either plaintiffs or defendants to use pretrial discovery to fully explore the factual bases for the other party's general claims.

_____
Justice


Justice William E. Hunt, Sr., joins in the foregoing concurrence.

_____
Justice

June 21, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Jerrold L. Nye
Nye & Meyer
3317 Third Ave. No.
Billings, MT  59101

Geoffrey R. Keller
Matovich, Addy & Keller
225 Petroleum Bldg.
2812 First Ave. No.
Billings, MT  59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy